IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFFREY L. JOHNSON and JOANNE S.
JOHNSON,

                     Plaintiffs,                    OPINION AND ORDER

   v.
                                                   20-cv-170-wmc

ROBERT J. PACHMAYER and BENSON
BUILDERS, LLC,

                     Defendants.

---

      Plaintiffs and spouses Jeffrey L. Johnson and Joanne S. Johnson assert a variety of claims against defendants Robert J. Pachmayer and Benson Builders, LLC, relating to their role as contractor for the construction of the Johnsons' house and boathouse in Lac du Flambeau, Wisconsin. Before the court is defendants' motion to dismiss under Rule 12(b)(3) for improper venue, seeking to compel arbitration, and a motion to dismiss under Rule 12(b)(6), as to certain claims. (Dkt. #10.) Because the court concludes that a provision in the construction contract at issue in this case requires arbitration of all claims asserted by plaintiffs, the court will grant defendants' Rule 12(b)(3) motion and dismiss this case.[1]

BACKGROUND[2]

      On or around June 21, 2017, plaintiff Jeffrey Johnson signed a cost-plus contract

---

[1] There are a number of other pending motions, but the court's decision to compel arbitration and dismiss this case moots those other motions.

[2] The following facts are drawn from the complaint and its attachments.

with defendant Benson Builders for construction of a house and boathouse for the Johnsons at 13400 and 13402 Sand Creek Lane, Lac du Flambeau, Wisconsin. Joanne is the co-owner of one parcel and her trust is the sole owner of the other parcel comprising "the property."[3] (Compl. (dkt. #1) ¶ 8; Compl., Ex. A (dkt. #1) pp.16-44 ("Contract").) The Contract was countersigned by defendant Robert Pachmayer, as President of Benson Builders. Under the terms of the Contract, Benson Builders was to construct a new home and boathouse, as well as rebuild an existing boathouse on the property. The "pre-construction estimate to complete the work" was $2,454,675, although this number was described as "merely an estimate, and the actual price would vary depending on the actual cost for labor and materials to complete the work." (Contract (dkt. #1) § 2.)

In exchange for Benson Builders' work on the property, Jeffrey agreed to pay Benson Builders "the actual cost incurred to complete the work plus a Contractor's Fee of fifteen percent (15%) of the cost of the Work" and to pay "5% on costs above the initial preconstruction estimates price plus any change order, customer selection, contingency amounts or approved bid costs." (*Id.*) The Contract contained the following provision describing the review, approval and payment process:

> Architect will review and approve amounts to be paid and notify Contractor of any amounts to be withheld and the reason(s) thereof. Architect will notify homeowner of approved amounts and homeowner will make payments to Contractor within two days.

(*Id.* § 5(A).)

---

[3] For ease of reference, the court will refer to the individual plaintiffs by their first names going forward.

Material to the present motions, the Contract also contains the following arbitration provision:

> Any dispute or controversy between Builder and Owner arising out of or related to the Contract shall be decided through binding arbitration, based on the final decision of a neutral arbitrator agreed to by the parties.  If the parties cannot agree on an arbitrator, each party shall name one attorney unrelated to this matter (an attorney not representing either party) who is a member of the Wisconsin State Bar.  The two named attorneys shall then select another attorney who is experienced in construction law to act as the arbitrator.  Judgment on an arbitration award may be entered in any court of competent jurisdiction.  Once an arbitrator is selected, the parties shall agree to the rules to govern the arbitration; provided, however, if the parties cannot agree to such rules, then the arbitration shall be conducted pursuant to the Construction Industry Arbitration Rules and Mediation Procedures of the American Arbitration Association.  If either party refuses to submit a claim to arbitration, or fails to abide by all the rules adopted, the nonbreaching party shall be entitled to recover all costs, including reasonable, actual attorneys' fees, incurred in seeking further action to enforce the terms of this provision and/or to compel arbitration.  Nothing in this section precludes or requires the parties to mediate this matter prior to invoking their right to arbitrate.  Arbitration to take place in Milwaukee, WI unless otherwise agreed to by the parties.

(Contract (dkt. #1) § 10.)

Benson Builder began work on the property in August 2017 and ceased work in March 2019.  During the course of the project, the Johnsons paid Benson Builders $2,610,787.04.  The Johnsons claim that:  (1) they were overbilled by Benson Builders for work on the project; and (2) Benson Builders failed to account for charges incurred during the project.  Moreover, they claim that they hired another builder to complete the project, who estimated that it was only 50% complete and charged an additional $2,061.200.00 to

do so. The Johnsons further claim that Benson Builders' work was defective, and they ultimately paid an additional $257,700.00 to repair the defects.

More formally, plaintiffs assert the following causes of action:

- Count I: breach of contract claim by Jeffrey Johnson against Benson Builders;
- Count II: breach of duty of good faith claim by Jeffrey against Benson Builders;
- Count III: unjust enrichment by both plaintiffs against both defendants;
- Count IV: violation of Wis. Stat. § 779.02(5) by both plaintiffs against both defendants;
- Count V: breach of fiduciary duty by both plaintiffs against both defendants; and
- Count VI: accounting by both plaintiffs against both defendants.

(Compl. (dkt. #1).)

## OPINION

A motion to compel arbitration is reviewed in a manner similar to one for summary judgment: the court considers all evidence in the record and draws all reasonable inferences in the light most favorable to the non-moving party. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *Scheurer v. Fromm Family Foods LLC*, No. 15-CV-770-JDP, 2016 WL 4398548, at *1 (W.D. Wis. Aug. 18, 2016). "A district court must promptly compel arbitration once it is satisfied that the parties agreed to arbitrate." *Tinder*, 305 F.3d at 735 (citing 9 U.S.C. § 4). However, the party moving to compel arbitration has the burden of demonstrating that the applicable agreement requires the parties to arbitrate the claims before the court. *Scheurer*, 2016 WL 4398548, at *1.

As an initial point, defendants invoke the Federal Arbitration Act ("FAA"), 9 U.S.C.

4

§ 1, *et seq.*, in support of their motion, and plaintiffs do not appear to contest its application. (*See* Pls.' Opp'n (dkt. #15) 25 (relying on the FAA to argue that arbitration is not appropriate here).) Moreover, the parties' reliance on the application of FAA is appropriate here, since it applies to transactions involving interstate commerce, *Malone v. Hoogland Foods, LLC*, No. 19-CV-891-WMC, 2020 WL 6158201, at *3 (W.D. Wis. Oct. 21, 2020), and the contract at issue concerns building of a $2.5 million house and boathouse, making it reasonable to infer that interstate commerce is implicated. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001) (the FAA "requires judicial enforcement of a wide range of written arbitration agreements").

To compel arbitration under the FAA, a movant must prove: (1) a valid agreement to arbitrate exists; (2) the dispute falls within the scope of that agreement; and (3) plaintiff has refused to proceed to arbitration in accordance with the arbitration agreement. *Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d 577, 580 (7th Cir. 2006); *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004); *Villalobos v. EZ Corp.*, No. 12–cv–852–SLC, 2013 WL 3732875, at *1 (W.D. Wis. July 15, 2013). As for these three specific requirements that defendants must prove to compel arbitration, there is *no* reasonable dispute that the first and third requirements are satisfied. As to the first, plaintiffs offer no challenge to the validity of the arbitration provision, including that the provision is somehow unconscionable. *See Janiga v. Questar Capital Corp.*, 615 F.3d 735, 741 (7th Cir. 2010) (a court's obligation is to evaluate challenges to the arbitration clause itself, whereas the arbitrator considers challenges directed at the agreement as a whole). As for the third requirement, while plaintiffs attempt to argue that defendants have not demanded

5

arbitration, by filing this motion to dismiss or compel arbitration, defendants are making just such a demand. More importantly, by refusing to dismiss their claims in this case, and arbitrate their dispute with defendants, plaintiffs have obviously refused to proceed to arbitration.[4] As such, defendants' motion rests on proof of the second requirement -- whether the dispute falls within the scope of that agreement.

As to this element, in addition to the sweeping language of the arbitration clause itself -- "Any dispute or controversy between Builder and Owner arising out of or related to the contract shall be decided through binding arbitration . . ." -- defendants benefit from a "presumption of arbitrability" in the sense that: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *A T & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

Defendants further contend that any question raised by plaintiffs as to whether the parties' entire dispute is arbitrable -- and specifically, whether their breach of contract claims fall within the scope of the arbitration provision, whether Joanne is required to arbitrate her claims and whether defendant Pachmayer can take advantage of the arbitration provision -- must be decided by the arbitrator in the first instance, directing the court to *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). In that case, the

---

[4] Defendants also point out that after plaintiffs' filing of this lawsuit, defendant advised plaintiffs in a letter that all of their claims belonged in arbitration. (5/26/20 Lessner Decl., Ex. A (dkt. #22-1).)

6

Supreme Court explained that whether the arbitrator or the court has the primary power to decide if the parties agreed to arbitrate a dispute under the FAA depends on whether the parties agreed to submit the threshold question to the arbitrator. Defendants also point to Section R-9 of Construction Industry Arbitration rules, which states that:

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.
>
> (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a party. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

(Defs.' Opening Br. (dkt. #11) 10 (quoting 4/24/20 Lessner Decl, Ex. B (dkt. #12-2)).)

Unsurprisingly, in response, plaintiffs contend that this court should determine the gateway question as to whether the parties' dispute falls within the arbitration provision. As this court explained in *Moorman v. Charter Communications, Inc.*, No. 18-CV-820-WMC, 2019 WL 1930116 (W.D. Wis. May 1, 2019),

> While plaintiffs are correct . . . that there is a presumption that a court decides disputes about arbitrability, *see Wis. Local Gov't Property Ins. Fund v. Lexington Ins. Co.*, 840 F.3d 411, 414-15 (7th Cir. 2016), the case law is also explicit that parties can agree to arbitrate "gateway" questions of arbitrability. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (holding that parties can agree to arbitrate "gateway" questions of arbitrability); *see also Grasty v. Colo. Tech. Univ.*, 599 Fed. Appx. 596, 598 (7th Cir. 2015) ("[W]e must enforce the parties' agreement to arbitrate 'gateway' questions about arbitrability of claims and the scope of the arbitration agreement." (citation omitted)).

*Id.* at *6.

Unfortunately, sweeping though it may be, the arbitration provision here is silent as to who should decide arbitrability questions. Defendants implicitly recognize this, which is no doubt why they point the court to the Construction Arbitration Rules. However, the arbitration provision does not adopt, at least directly, these rules; instead, it states that:

> if the parties cannot agree to such rules, then the arbitration shall be conducted pursuant to the Construction Industry Arbitration Rules and Mediation Procedures of the American Arbitration Association.

(Contract (dkt. #1) § 10.) Recognizing this predicament, defendants "insist that the arbitration be governed by the Construction Industry Arbitration Rules an Mediation Procedures of the AAA," meaning "there is no possibility that any other rules will govern the arbitration." (Defs.' Reply (dkt. #21) 6.) While having a certain logic to it, defendants' reasoning falls short of an express agreement by the parties to arbitrate all gateway questions. Because of this uncertainty, the court will take up plaintiffs' challenges to the scope of the arbitration provision, and, specifically, whether all the disputes at issue in this lawsuit fall within that provision. Fortunately, the result is the same here, since all the parties' disputes belong in arbitration.

In response to defendants' motion, plaintiffs posit various arguments against reading the arbitration clause of the parties' agreement to reach plaintiffs' claims or at least all of their claims. The court will address each in turn. Plaintiffs *first* contend that the quasi breach-of-contract and tort allegations do not "arise from" their contact, and therefore are not arbitrable. Specifically, in counts three through six, plaintiffs assert claims for unjust enrichment, statutory contractor theft, breach of fiduciary duty and accounting.

8

However, as this court explained in *Dries v. Onebeacon Am. Ins. Co.*, No. 15-CV-233-WMC, 2016 WL 755655 (W.D. Wis. Feb. 25, 2016), "a party may not avoid arbitration by casting its complaint in terms of tort rather than contract." *Id.* at *3 (citing *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress International, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993)). Indeed, "when multiple claims depend on a single, underlying act, it is illogical to conclude some are arbitrable and others are not." *Dries*, 2016 WL 755655, at *3 (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999)).

In this case, plaintiffs' unjust enrichment, statutory contractor theft and breach of fiduciary claims depend on the same set of facts as alleged in support of their breach of contract claim. Specifically, plaintiffs allege that defendants accepted and retained payments from plaintiffs that would be inequitable for defendants to maintain in support of their unjust enrichment claim. (Compl. (dkt. #1) ¶¶ 51-53.) These are the same payments that plaintiffs allege were made under the terms of the contract. (*Id.* ¶¶ 18, 24.) Plaintiffs also allege that defendants violated Wis. Stat. § 779.02(5) by using construction funds for their own purposes without the Johnsons' permission or consent. (*Id.* ¶¶ 56-61.) Here, too, the use of these monies allegedly held in trust by defendants concern the *same* payments plaintiffs made under the terms of the contract. (*Id.* ¶ 18, 24.) Finally, the breach of fiduciary duty claim rests on an allegation that defendants were required to provide "full, complete and accurate accounting for the project." (*Id.* ¶ 67.) Again, the contract similarly required defendants to submit invoices reflecting project costs, providing further support that the non-contract claims rest on the same alleged facts as those

implicated by the contract claims.[5]

Plaintiffs' argument that any "non-contract" claims are not subject to arbitration fails for a different reason. Even assuming that the "arising out of" language somehow limits arbitrable claims to breach of contract claims, the arbitration provision is not limited to those claims; it also encompasses claims "related to" the contract. (Contract (dkt. #1) § 10.) Accordingly, the language contemplates that quasi-contract, tort and statutory claims at issue in this lawsuit are arbitrable, since, as just described, *all* these claims rest on the same facts underlying plaintiffs' breach of contract claims or, at minimum. "relate to" the contract. *See Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999) (citing *Tracer Research Corp. v. National Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994), for the proposition "that language such as 'relating to' indicates an arbitration clause considerably broader in reach than one limited to disputes 'arising out of' certain dealings"). Indeed, under Wisconsin law, the existence of plaintiffs' contractual relationship generally precludes any tort remedies that might arguably exist. *See, e.g., Kalahari Dev., LLC v. Iconica, Inc.*, 2012 WI App 34, ¶ 26, 340 Wis. 2d 454, 811 N.W.2d 825 (concluding that the economic loss doctrine barred negligence claims against a contractor where the construction contract included the provision of materials). (*See also* Contract (dkt. #1) § 3(B) (describing the "work" as including providing materials and equipment).)

---

[5] Plaintiffs also assert a claim for "accounting," but this claim is really a remedy and not a separate basis for finding liability. Regardless, any right to an accounting also arises directly out of the parties' contractual relationship.

*Second*, plaintiffs argue that *Joanne* should not be required to arbitrate her claims, since unlike her husband, she was not a signatory to the contract. The Seventh Circuit addressed this argument in *Zurich American Insurance Company v. Watts Industries, Inc.*, 417 F.3d 682 (7th Cir. 2005). That case involved two, related corporations who were sued their insurer for coverage. However, one of the companies, James Jones Company, "did not sign the agreements containing arbitration clauses and state[d] that it never agreed to arbitrate anything." *Id.* at 687. Nevertheless, Zurich sought to force arbitration of Jones' claim as well, arguing that " (1) Watts, as Jones's parent company, bound Jones to the agreements, and (2) Jones has invoked the benefits of the insurance policies, and thus may not avoid the obligation of arbitration contained in the agreements associated with the insurance policies." *Id.* While the Seventh Circuit recognized in *Zurich* that "[a]rbitration is contractual by nature," and thus, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (citing *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) (internal quotation marks and citation omitted)).

Still, the Seventh Circuit went on to articulate "five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Zurich*, 417 F.3d at 687 (citing *Fyrnetics (H.K.) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002)). Most relevant to this claim, the court explained that a "nonsignatory party is estopped from avoiding arbitration, if it knowingly seeks the benefits of the contract containing the arbitration clause." *Id.* In particular, the court concluded that the party

seeking to compel arbitration of a nonsignatory party must point to "a *direct* benefit under the *contract containing an arbitration clause* before a reluctant party can be forced into arbitration." *Id.* at 688 (emphasis in original). Based on the facts in that case, the court concluded that "because Jones has not sought to enforce any rights it has under the deductible agreements, and in fact there would be no benefits to Jones under those agreements," Zurich had failed to make such a showing. *Id.*

In contrast, the court concludes here that Joanne both claims and was intended to receive the very same benefits under the contract as that received by her husband Jeffrey; therefore, she is estopped from avoiding arbitration. *Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380 (7th Cir. 2014). In *Everett*, a district court had found that Ms. Everett only "exploited, or benefited from, the contractual relationship between her husband" and defendants, but her own benefits were "indirect," deriving from her husband, rather than her husband's franchise relationship with the defendants itself. *Id.* at 384. However, the Seventh Circuit reversed, finding the district court's of a direct benefit was "too narrow," and concluding that Ms. Everett was estopped from avoiding arbitration because she "received the same benefits as her husband, which included benefitting from trading upon the name, goodwill, reputation and other direct contractual benefits of the franchise agreement." *Id.* The Seventh Circuit's holding in *Everett* is, if anything, even *more* applicable here, because Joanne derived the *same*, if not greater, benefits from the contractual relationship entered into by her husband -- namely, construction of a new house and boathouse on property she owns either in part or in full. Moreover, in asserting the non-contract claims described above, Joanne seeks to establish defendants liability in

12

her favor on contract terms or, at minimum, on the same facts as alleged in support of the breach of contract claims. Having derived and claimed direct benefits from the contract, as her husband Jeffrey, the court concludes that she, too, is estopped from avoiding arbitration.

*Third*, plaintiffs contend that because defendant Pachmayer did not sign the contract, he cannot rely on the arbitration provision. As an initial point, Pachmayer *did* sign the contract, albeit as Benson Builders' President. Nonetheless, the court rejects this argument for the same reason it rejects plaintiffs' argument that Joanne should not be required to arbitrate her claims: since plaintiffs' claims against defendant Pachmayer all relate to the facts, rights and conditions in the contract, they all fall within the scope of the arbitration provision. *See Shipp v. XA, Inc.*, No. 06 C 1193, 2006 WL 2583720, at *5 (N.D. Ill. Aug. 31, 2006) (citing the Seventh Circuit's *Zurich* decision in rejecting plaintiff's argument that it need not arbitrate a claim against a non-signatory defendant to the contract, finding that the plaintiff's "claim is rooted in and dependent on rights and conditions defined in the Agreement").

*Fourth*, plaintiffs contend that the arbitration provision does not apply because the contract was terminated in March 2019. As support for this dubious legal proposition, plaintiffs direct the court to *Local 703, International Brotherhood of Teamsters v. Kennicott Brothers Company*, 771 F.2d 300 (7th Cir. 1985), in which the Seventh Circuit considered whether an arbitration clause in a collective bargaining agreement covered disputes arising six months *after* the agreement's expiration. The court found "although the absence of express language in the Agreement evincing an intent to cut off all arbitration with the

13

contract's expiration may suggest that some post-contract grievances are arbitrable under this Agreement, these particular grievances are not arbitrable, triggered as they were more than six months after the Agreement's expiration." *Id.* at 304.

For at least two reasons, however, the present case is readily distinguishable from *Kennicott Brothers*. Most fundamentally, as plaintiffs allege in the complaint, the parties' dispute arose *before* the termination of the contract. Specifically, plaintiffs allege that "[i]n the fall of 2018, the Johnsons grew concerned about the slow pace of project progress and the lack of documentation to support Benson Builders' invoices" and that the "Johnsons began asking Benson Builders questions about irregularities in the invoices." (Compl. (dkt. #1) ¶¶ 19-20.) In contrast, the contract did not even allegedly "terminate" until March 2019. The other distinction is almost equally compelling: the arbitration provision covers "[a]ny dispute or controversy between Builder and Owner arising out of or related to the Contract." Thus, as observed before, the arbitration provision covers all disputes related to the contract, not just those that arise during the contract term. More to the point, unlike a collective bargaining agreement with a defined term, the contract here did not contemplate a specific timeframe. If the court were to adopt plaintiffs' argument that an arbitration provision like that at issue here is only valid while the contract is active, this would effectively gut such a provision, contrary to the clear public policy preference for arbitration, to say nothing of gutting the other rights and remedies available under the contract that the plaintiffs are still asserting.

*Fifth*, and finally, plaintiffs argue that arbitration is not available because defendants waived their right to it based on pre-litigation conduct. (Pls.' Opp'n (dkt. #15) 15 (citing

14

*Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 952 F.3d 887, 891 (7th Cir. 2020)).) However, plaintiffs do not develop any argument that defendants somehow *waived* their right to arbitration; rather, they fault defendants for failing to engage *productively* in any pre-arbitration mediation efforts. Plaintiffs cite no legal support, and the court cannot conceived of any reason, for a party to be precluded from invoking an arbitration provision merely because they engaged in voluntary mediation unsuccessfully first. As such, the court rejects this argument as well.

Having held that the parties' disputes fall within the scope of the arbitration provision in their contract, the court agrees with defendants that an order compelling arbitration is required. While the court may stay a lawsuit pending resolution of arbitration, the arbitration provision states that it must occur in Milwaukee, Wisconsin, which is obviously not in this judicial district. *See Faulkenberg v. CB Tax Franchise Systems, LP*, 673 F.3d 801, 808 (7th Cir. 2011) ("A Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or to compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district."). As such, this lawsuit will be dismissed for improper venue.

ORDER

IT IS ORDERED that:

1) Defendants Benson Builders, LLC and Robert J. Pachmayer's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) (dkt. #10) is GRANTED IN PART as to Rule 12(b)(3) AND DENIED AS MOOT IN PART as to Rule 12(b)(6).

2) The parties' other motions (dkt. ##34, 39, 48, 51, 80, 84, 88) are also DENIED AS MOOT.

Entered this 14th day of September, 2021.

                        BY THE COURT:

                        /s/

                        _____
                        WILLIAM M. CONLEY
                        District Judge